UNITED PUMP & POWER CO. et al. v. PFAU MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915. Rehearing Denied May 25, 1915.)

No. 2160.

PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—PNEUMATIC PUMP.

The Perry patent, No. 933,200, for a pneumatic pump, claim 25, *held* not anticipated, valid, and infringed, and claim 27 not infringed.

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Suit in equity by the United Pump & Power Company and Thomas O. Perry against the Pfau Manufacturing Company. Decree for defendant, and complainants appeal. Reversed.

This appeal is from a decree on final hearing of the issues, whereby the appellants' bill for infringement of United States letters patent No. 933,200 is dismissed for want of equity.

The appellants are joined in the bill, as licensee and patentee, and the patent is entitled "Pneumatic Pump or Apparatus for Raising Water by Means

of Compressed Air." In the specifications the object of the invention is thus stated:

"My invention relates to improvements in pneumatic pumps in which air under tension is made to act directly against the water to be elevated, expelling it from a pair of closed chambers which require to be alternately filled and emptied; and the objects of my improvements are: First, to provide positive and efficient means for automatically operating an air valve which controls the alternate admission and escape of air to and from the pair of closed water chambers; second, to effect a complete emptying and refilling of each water chamber without waste of air or undue diminution of the chamber capacity due to premature action of the air valve in either direction; third, to obtain abundance of power for operating the automatic air valve without excessive enlargement of the pump, thereby saving the cost in material and making it feasible to operate the pump in restricted spaces."

In figure 5 of the patent drawings the structure of the device is shown as follows:

Description thereof is well summarized in the brief for appellants, to wit:

"The pump consists of two water chambers, $M$ and $N$ (figures 5 and 8), which are placed side by side and closed at the top by a cap, $L$, common to both, and at the bottom by means of a base, $R$. The base comprises a hollow cast-

ing, the interior of which communicates with each chamber through an annular opening, $R'$, and also with the water inlet, $Q$. Water passages connect the chambers through the openings, $R^2$ adapted to be closed by upwardly opening check valves, $X$, said openings being in communication with a water delivery pipe, $O$. The water inlets are covered by ring valves, $U$, adapted to be opened by the water under submergence pressure.

"The head, $L'$, has secured thereto a suitable framework for the support of an air motor, consisting of double diaphragms, $l$, $a$, secured in suitable concave chambers. These diaphragms are connected by means of telescoping tubes, $m'$, $b'$, having therein a 'restoration spring,' $h$.

"Midway between the diaphragms, fulcrumed on a standard, $g$ (figure 5), is an auxiliary lever, $G$, made in the form of a ring arranged to inclose a cylindrical cage, $J$, with which it is pivotally connected upon opposite sides. The cage surrounds the tubes, $b'$, $m'$, and has, at each end, narrow internal flanges between which and the tubes there is an annular space. Two washers, $d$, $e$, fitting loosely within the cage and around the tubes, are adapted to be normally thrust apart against the interior flanges at each end of the cage by means of a coiled spring, $S$. Shoulders $b^2$, $m^2$, on the tubes are adapted to engage the washers. Links, $f$, connect the auxiliary lever, $G$, with arms projecting at right angles from the axis of a rock shaft, $F$, which is pivoted in standards, $E$ and $I$, figures 1 and 5, and bent around the cage, $J$. One end of the rock shaft is passed through a bore in the part, $E$, and is provided with a tongue which enters a socket, $D^5$, in a valve, $D$, as clearly shown in figures 2 and 4, the valve, $D$, being provided with suitable ports and inclosed in an air tight casing, $C$, in communication with an air pipe, $i$, by which air under pressure is supplied from a tank or other source of supply, to said casing. Ducts, $E^{11}$, $E^{12}$, connect the valve chamber with the water chambers, $M$ and $N$, respectively, said ducts communicating with ports in the valve as the latter is oscillated by the rock shaft, to permit the live air, under compression, to pass from the casing, $C$, alternately to one or the other of said chambers, and to escape from the companion chamber through a suitable exhaust port in the valve. Small floats, $W$, one in each chamber (figures 7 and 8) are in operative connection with vent valves, $u'$, $u'$, one of which is in communication through suitable ducts with a port in the valve and the upper side of the diaphragm, $a$, and the other with another port in said valve and the under side of the diaphragm, $l$. Both diaphragm chambers are arranged to alternately exhaust through said valve.

"Assuming the pump to be submerged and the water chambers filled, the admission of compressed air to the valve chamber will result as follows:

"In the position shown in figures 1 and 2, the valve, $D$, permits compressed air to enter the chamber, $M$, thereby expelling the water until the chamber is nearly empty, when the float, $W$, descends, thereby opening the vent valve, $u'$, which results in the admission of compresed air above the diaphragm, $a$, thus forcing down the disk, $b$, tilting the rock shaft and reversing the valve, $D$. With each water chamber discharge the motor is shifted and, through it, the valve is reversed.

"Pivoted between the two diaphragm chambers at $B'$ and $K'$, respectively, are latches, $H$, figures 5 and 6, each in the form of an elbow lever. The inner end of the horizontal arm of the lower one is bent downward, as shown at $H'$, figure 5, to be engaged by a disk, $m$, above the diaphragm, $l$, as the latter is lifted and the corresponding arm of the upper latch is arranged to be engaged in like manner by a similar disk, $b$, beneath the upper diaphragm. A tongue, $G'$, upon the end of the lever, $G$, is adapted to be alternately engaged by a tooth upon one or the other of the latches, and rigidly held thereby until released by the action of the motor—the parts being so adjusted that the motor spring, $S$, is first compressed to a predetermined extent, so that when the release occurs to allow the valve to be shifted by the action of the rock-shaft, enough power will be restored in the spring, and kept there by the follow-up action of the motor, to cause the valve to be moved to its full limit. The movement thus resulting will cause the tongue, $G'$, to so act upon the companion latch as to become engaged, temporarily held, and released thereby upon the reverse action of the motor.

"It will thus be seen that while the motor itself is connected with and

adapted to move the valve, there is interposed between them a resilient connection which is acted upon by the motor, while the valve is rigidly held against movement until the spring is released to insure the full movement of the valve. While the motor spring and latches may not often be needed in continuous pumping, under faucet control their presence becomes vital to successful action."

The claims of invention are 37 in number, and the original charges of infringement were directed to claims 18, 19, 25, 27, and 34, but all have been eliminated from consideration except claims 25 and 27, reading as follows:

"25. In a pneumatic pump, the combination with a source of compressed air, two water chambers having inlet and outlet valves for water, and a reversible air valve adapted to alternately let air into and out of said water chambers, of a motive spring adapted to actuate said air valve by recoil from either end after compression, and a motor adapted to compress opposite ends alternately and release said motive spring, substantially as herein set forth."

"27. In a pneumatic pump, the combination with a source of compressed air, two water chambers having inlet and outlet valves for water, and a reversible air valve adapted to alternately let air into and out of said water chambers, of a motive spring adapted to actuate said air valve by recoil after compression, a motor for compressing said motive spring and reversing said air valve, a retarding device adapted to arrest and release said air valve during the reversal action of said motor, and means whereby the motor may positively effect a partial reversal of said air valve independently of the recoil of said motive spring, substantially as herein set forth."

The opinion filed below predicates the decree on two conclusions: (1) That claim 25 is invalid for anticipation by Atkinson's British patent (of 1893) in evidence; and (2) that claim 27 is not infringed by the defendant's device. No other issues are presented in the arguments of counsel, except that it is contended on behalf of the appellee that claim 25 is not infringed by its structure, even if such claim be upheld as valid.

Charles A. Brown and David H. Fletcher, both of Chicago, Ill., for appellants.

F. E. Dennett, of Milwaukee, Wis., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The specifications of the Perry patent in suit (No. 933,200) disclose and clearly describe a combination of unitary means in a pneumatic pump, whereby water is drawn from the well or other source of supply and delivered directly to faucets for use, thus dispensing with the pre-existing requirement of a tank or reservoir for storage of the supply. Its means were so provided and arranged that the flow of fresh water was entirely governed by the opening and closing of the faucet, thereby starting or stopping the operation of the pump. The efficiency and usefulness of the device are settled facts in the record; and the undisputed evidence establishes the further important fact that no prior pump had appeared in the extensive art of pumping devices which accomplished or was adapted to perform such operation and function, for domestic or analogous uses. Thus the presumption of patentability arising from the patent grant is well fortified by proof of meritorious invention in its "new and useful pneumatic pump" as an entirety. We do not understand this view of the device to be controverted, either in the opinion of the trial court upon which the appellants' bill for infringement was dismissed, or in the arguments of counsel in support of the decree.

The appellee's pneumatic pump accomplishes identical operations and result, both in direct pumping of water from the well to the faucets and complete faucet control for starting and stopping the flow for use, and its combination of means therein is plainly analogous to those united in the Perry device. It appears, however, that its structure differs in details from that of the patent in so far as to escape infringement of all claims embraced in the grant, aside from claims 25 and 27 in controversy, so that the various other claims do not require consideration, and the validity or scope of claims 25 and 27 are the issues presented on this appeal.

The rulings of the trial court were, in substance: (1) That claim 25 is invalid for anticipation by Atkinson's British patent (No. 9801), issued April 15, 1893; and (2) that two of the elements specified in claim 27 are not contained in appellee's structure, "and for that reason infringement is avoided." In the argument for appellee it is contended, not only that both of these rulings are well founded, but that claim 25 is not infringed, if its validity be assumed. We believe the ruling against the validity of claim 25 must be predicated entirely on the theory that the claim was too broad on reference to the Atkinson British patent, and not that it was met thereby in the strict sense of anticipation in the patent law. But whatever may have been the view adopted as to the force of the Atkinson patent, it is obvious that both issues of validity and scope of these claims must hinge on the interpretation of that patent and other prior patents relied upon for support of the decree. The undoubted premises for that inquiry (as above indicated) are: (a) That the gist of the Perry invention resides in its unitary means for drawing fresh water from its source to the faucet, together with complete faucet control of the pumping operation; and (b) that neither of the prior patents shows anticipation thereof for like operation and result. Upon claims 25 and 27, however, the tests to be applied to the prior patent (or patents) are sufficiency of disclosure therein in one and the other of these aspects: (1) To bar the claims of invention allowed in the combination of means embraced in claim 25; or, if not so barred, (2) to limit both claims to the particular elements specified, without benefit of mechanical equivalents. In reference to both claims, their embodiment of an operative combination is undoubted.

1. Claim 25 of the Perry patent reads:

"In a pneumatic pump, the combination with a source of compressed air, two water chambers having inlet and outlet valves for water, and a reversible air valve adapted to alternately let air into and out of said water chambers, of a motive spring adapted to actuate said air valve by recoil from either end after compression, and a motor adapted to compress opposite ends alternately and release said motive spring, substantially as herein set forth."

Atkinson's British patent of 1893 describes a pump having "special advantages for pumping thick fluids" and "for raising water from deep wells, mines," etc. Its structure is specified and shown in drawings, and stated in claim 1 as—

"having duplex chambers alternately filled and discharged by the suction and compression of the same body of air, the employment of any automatic valve

operated by the suction of the air compresser, so as to be suddenly and completely reversed in the manner described."

Both Atkinson and Perry devices are pneumatic pumps, employing various means in their respective combinations which are common to that type, and their resemblances therein are due, as we believe, to that feature, and do not establish identity of conceptions. Atkinson's pumping action is continuous in conformity with his object, while the Perry pump has a different conception, for faucet delivery and control, with means adapted to that end neither present in the Atkinson pump, nor adapted to its purpose. For distinctions in structure we believe the following mentions to be sufficient: Atkinson's device provides for operation through compressed air applied to the cylinders and suction applied to the motor, and is incapable of utilizing the benefits of compressed air for both purposes, while that of Perry has means for applying compressed air to cylinders and motor, and thus obtains a new and needful benefit for his object. The motors differ substantially in structure and operation. Atkinson has neither the "motive spring" of claim 25 "adapted to actuate" the air valve, nor its co-operating means for valve operation. Other differences in co-operative means likewise appear, which are material for their respective conceptions, and we are impressed with no feature of the Atkinson disclosure authorizing the ruling of its anticipation of claim 25, nor do we understand it to involve or advance the conception embraced in that claim. Therefore its validity is upheld.

The further contention of noninfringement of claim 25 rests on two propositions, in substance: (a) That the patentee is limited by the Atkinson disclosure to his "specific element of a reversible air-valve" and "the doctrine of mechanical equivalents cannot be invoked" in his favor "to include other forms of valve mechanism"; and (b) that the appellee escapes infringement through its use of a different form of reversible air-valve, namely, of the well-known "poppet type." We believe the foregoing definitions of the Perry invention render these twofold propositions untenable, and that it is sufficient to remark that both forms constitute the "reversible air valve adapted to alternately let air into and out of said water chambers," and the appellee's plurality of form (incident to its adoption of the "poppet type") cannot serve for escape from infringement. We are impressed with no view of the other prior patents in evidence which calls for discussion.

2. Claim 27 supplements claim 25 with the further elements:

"A retarding device adapted to arrest and release said air-valve during the reversal action of said motor, and means whereby the motor may positively effect a partial reversal of said air-valve independently of the recoil of said motive spring."

For definitions of these additional elements in the patent specifications and drawings, and applicability thereof to the appellee's structure, the contentions of appellants' counsel in the argument are not in accord with the testimony of their expert witness (Mr. Redfield) in respect thereof, and whatever may have been their meaning in the claim, we are not satisfied of certainty therein for support of the charge of infringement.

Means must be clearly described in the specifications to be made the subject-matter of a claim, and the above-mentioned references to functions of these additional elements, respectively, are insufficient, as we believe, for their identification with elements employed in the appellee's structure, so that infringement of claim 27 is not established.

The decree of the District Court therefore is reversed, with direction to enter a decree upholding the validity of claim 25, infringement thereof by the defendant, and for relief accordingly under the bill.